IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
CA No.: 5:25-CV-00562

ESTRELLA SOLIS, on behalf of the Estate of Narciso Solis and all others similarly situated, )
)
)
)
                        Plaintiff, )        **COLLECTIVE/CLASS ACTION**
)                **COMPLAINT**
v. )
)
OPW FUELING COMPONENTS LLC, )
)
                        *Defendant.* )
_____ )

COMES NOW, Estrella Solis ("Plaintiff" or "Plaintiff Solis"), on behalf of the Estate of Narciso Solis and all others similarly situated (collectively "Plaintiffs") by and through undersigned counsel, and hereby sets forth this collective action for violation of the Fair Labor Standards Act under § 216(b), and a representative action under the North Carolina wage and Hour Act pursuant to Fed. R. Civ. P. 23, and alleges as follows:

**PRELIMINARY STATEMENT**

1.      Plaintiff brings this action on behalf of the Estate of Narciso Solis individually and as a collective action against Defendant OPW Fueling Components LLC ("Defendant OPW" or "OPW") under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*., and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1, *et seq*., for not fully compensating employees who work or have worked at Defendant OPW. Defendant OPW had a systemic company-wide policy, pattern, or practice of failing to pay employees for all hours worked, including, but not limited to, pre-

shift compensable work activities, unpaid overtime compensation, liquidated damages, and related penalties and damages.

2.     Plaintiffs consist of current and former employees working in the manufacturing and operations departments for Defendant OPW.

3.     Despite notifying Plaintiffs of their non-exempt hourly status, overtime eligibility, promised straight or regular hourly rates, promised bonuses, and a promise to pay employees for all "Working Time" (defined by Defendant as any time that is considered "compensable" under federal, state, or local law) through an employee handbook and earning statements consistent with the NCWHA, Plaintiff and others similarly situated were not always paid for all of their hours worked, including but not limited to hours worked below and in excess of forty (40) hours per week at the appropriate overtime rate and time spent working through meal breaks.

4.     Defendant OPW is aware of Plaintiffs working generally in excess of forty (40) hours per week, as Defendant OPW has suffered or permitted Plaintiffs to work in excess of forty (40) per week on a regular basis without being properly compensated at one-and-one-half (1.5) times the regular rate for hours worked over forty (40) hours per week.

5.     Defendant OPW's practice of failing to compensate Plaintiffs at the appropriate promised straight time and overtime rates violates Plaintiffs' rights under either the FLSA and/or the NCWHA; and therefore, Plaintiff, on behalf of the Estate of Narciso Solis and all others similarly situated, seeks statutory overtime wages and the appropriate overtime premiums for all overtime work required, suffered, or permitted by Defendant

OPW, liquidated damages, and/or other damages as permitted by applicable law, as well as attorneys' fees, costs, and expenses incurred in this action.

6. Named Plaintiff brings this action for violation of the FLSA as a collective action, pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of the following class:

> All individuals who were, are, or will be employed at Defendant OPW's North Carilina facility on the manufacturing floor in non-managerial positions who were not compensated for all of their hours worked, including, but not limited to, above forty (40) hours per week any time within three years prior to the commencement of this action[1] through the present.

7. Defendant OPW is liable for its failure to pay Plaintiffs for all work performed at the appropriate overtime rate for hours worked in excess of forty (40) per week.

8. Plaintiffs who elect to participate in this FLSA collective action seek compensation for all statutory overtime wages, an equal amount of liquidated damages, post-judgment interest, and attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

9. Named Plaintiff also brings this action, on behalf of the Estate of Narciso Solis, and as a representative of similarly situated current, former, or future manufacturing and operations employees, employed by Defendant OPW in North Carolina, under the NCWHA.

---

[1] Given this Court previously granted tolling for Named Plaintiff's FLSA claims in the *Quevedo-Hernandez v. OPW Fueling Components, LLC,* CA No.5:25-cv-00203-FL, matter (*Quevedo-Hernandez*, ECF 30), this action relates back to the date Plaintiff opted in to related matter, *Canales v. OPW Fueling Components, LLC*, CA No.: 5:22-cv-00459-BO-RJ, ECF 70 (filed January 26, 2024, making the relevant time period January 26, 2021, through the present).

3

10. Named Plaintiff Estrella Solis, on behalf of the Estate of Narciso Solis ("N. Solis"), who was a North Carolina resident and who worked for Defendant OPW in North Carolina, asserts that N. Solis and the putative class, who works or worked in North Carolina for Defendant OPW, are entitled to compensation for all work performed for Defendant OPW, whether the workweek totaled greater or fewer than forty (40) hours, compensation at the appropriate regular or promised rate for all hours worked in excess of forty (40) per week, and for an equal amount liquidated damages, prejudgment interest, and attorneys' fees and costs pursuant to N.C. Gen. Stat. §§ 95-25.13, 95.25.6, 95.22(a), (a1), and (d). These promises are not enforceable under the FLSA, and thus the NCWHA is more stringent and provides greater protections to North Carolinians than the FLSA.

11. Plaintiff seeks class certification under Rule 23 of the Federal Rules of Civil Procedure for the following class of Defendant OPW's employees in North Carolina:

> Proposed 30 Minute Auto Deduction Class: All individuals who were, are, or will be employed at Defendant OPW's North Carolina facilities on the manufacturing and operations floor in nonmanagerial hourly positions who were subject to interrupted lunch breaks during supposed thirty-minute (30) meal breaks, without a corresponding time entry showing that an unpaid meal was recorded and/or paid as hours worked. (the "Meal Break Deduction Class"), within two years prior to the commencement of the *Canales* action, through the present.[2]

> Proposed Time-Shaving Class 2: All individuals who were, are, or will be employed at Defendant OPW's North Carolina facilities on the manufacturing and operations floor in nonmanagerial hourly positions whose time was recorded and experienced time shaving from their

---

[2] Named Plaintiff's NCWHA claims were also tolled in the *Quevedo-Hernandez v. OPW Fueling Components, LLC,* CA No.5:25-cv-00203-FL, matter from the date the original complaint was filed in the *Canales* action, or November 16, 2022. *Quevedo-Hernandez*, ECF 30, at 6 (tolling Named Plaintiff's NCWHA claim from November 16, 2022, through March 25, 2025).

4

actual recorded hours worked, within two years prior to the commencement of the *Canales* action, through the present.[3] (the "Time-Shaving Class").

Proposed Off the Clock ("OTC") Work Class: All individuals who were, are, or will be employed at Defendant OPW's North Carolina facilities on the manufacturing and operations floor in nonmanagerial hourly positions who may have been subjected to Off-the-Clock work at least once prior to the start of their shift, during lunch breaks, or following the end of their shift, within two years prior to the commencement of the *Canales* action, through the present.[4] (the "Off-The-Clock Class").

Proposed Bonuses Class: All individuals who were, are, or will be employed at Defendant OPW's North Carolina facilities on the manufacturing and operations floor in nonmanagerial hourly positions, subject to non-payment of promised bonuses at least once, within two years prior to the commencement of the *Canales* action, through the present.[5] (the "Bonuses Class").

12.     Accordingly, Named Plaintiff seeks all available relief for these claims, including, but not limited to, back pay, front pay, past pecuniary losses, prejudgment interest, attorneys' fees and costs, and all other relief permitted by applicable law.

## **PARTIES**

13.     Defendant OPW Fueling Components LLC ("Defendant OPW") is part of the Dover family, a diversified global manufacturer and solutions provider with annual revenue of nearly $8 billion that delivers innovative equipment, components, consumable supplies, aftermarket parts, software and digital solutions, and support services. Defendant OPW oversees the manufacturing of fuel transfer, containment, and dispensing products

---

[3] *Supra* fn. 2.
[4] *Supra* fn. 2.
[5] *Supra* fn. 2.

and systems for use in retail and commercial applications. *See* https://www.opwglobal.com/.

14. Defendant OPW Fueling Components LLC is organized under Delaware law and has its principal place of business at 9393 Princeton-Glendale Road, Hamilton, Ohio 45011. According to its website, Defendant OPW has existed in some capacity since 1892. Upon information and belief, Defendant OPW's Smithfield, North Carolina, manufacturing plant employs approximately 100-400 individuals across all departments.

15. At all relevant times, Defendant OPW is an employer within the meaning of the FLSA, 29 U.S.C. § 203(d), and the NCWHA, N.C. Gen. Stat. § 95-25.2(5).

16. At all relevant times, Defendant OPW operates as an enterprise within the meaning of 29 U.S.C. § 203(r)(1).

17. Named Plaintiff is the Next of Kin for her husband, Narciso Solis, an adult citizen and resident of the state of North Carolina. N. Solis worked as a Machine Operator for Defendant OPW during the relevant time period at issue, until he suffered a work-related accident in October 2021, and was subsequently terminated November 22, 2021.

18. Named Plaintiff previously opted-in to the related action *Canales v. OPW Fueling Components LLC* CA No.: 5:22-cv-00459-BO-RJ on January 29, 2024, which was later decertified on March 25, 2025. *Canales*, ECF 208. To preserve Solis's FLSA claims, Named Plaintiff opted-in to the subsequent action *Quevedo Hernandez v. OPW Fueling Components LLC* CA No.5:25-cv-00203-FL on April 17, 2025, which was later sent to arbitration on August 18, 2025. *Quevedo Hernandez,* ECF 3. However, in *Quevedo* the Court tolled the statute of limitations on N. Solis's FLSA claim from January 29, 2024, to

March 25, 2025. *Quevedo Hernandez,* ECF 30. Because an FLSA collective action is considered commenced for an opt-in plaintiff as of the date the party files their opt-in notice (29 U.S.C. § 256(b)), the forthcoming date of the commencement of this action is January 29, 2024. As a result, the relevant time period at issue spans from January 29, 2021, through the present.

19.     The proposed FLSA collective consists of individuals who have worked for Defendant OPW, earned an hourly wage, and were not paid properly and consistently with the FLSA's statutory overtime requirement.

20.     At all relevant times, Plaintiffs were employees engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206, 207.

21.     At all relevant times, Defendant OPW has had gross operating revenues in excess of $500,000, consistent with 29 U.S.C. § 203(s)(1)(A)(ii).

22.     Named Plaintiff brings this action on behalf of the Estate of Narciso Solis and, pursuant to 29 U.S.C. § 216(b), as a representative of a proposed collective action of similarly situated employees.

## JURISDICTION AND VENUE

23.     This Court has original federal question jurisdiction under 28 U.S.C. § 1331 for the claims brought under the FLSA, 29 U.S.C. § 201, *et seq*.

24.     According to its website, Defendant OPW operates in North Carolina and maintains a business location at 3250 US Highway 70 Business West, Smithfield, NC 27577.

25. The United States District Court for the Eastern District of North Carolina has personal jurisdiction because Defendant OPW conducts business in Johnston County, North Carolina, which is located within this district.

26. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), since Defendant OPW conducts business within the Eastern District of North Carolina, and the substantial part of the events or omissions giving rise to these claims occurred in this District.

27. The claims for violations of the NCWHA are based upon the statutory law of the State of North Carolina.

28. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the pendent state claims under the NCWHA because the state law claims arise out of the same nucleus of operative facts as the FLSA claims.

29. All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness, and convenience for the parties.

30. The evidence establishing liability for the causes of action will be similar, and the state law claims will not predominate nor create confusion for a jury.

31. Upon information and belief, during the period relevant to this action, Defendant OPW was an employer, joint employer, or member of an integrated, common enterprise of Plaintiff such that Defendant OPW, or its agents, held or implemented power to control the work performance of Plaintiff, and Defendant OPW directly received the benefit of Plaintiff's labor.

## COVERAGE

32. At all times material to this action, Defendant OPW acted, directly or indirectly, in the interest of an employer with respect to Named, opt-in, and putative Plaintiffs.

33. At all times material to this action, Defendant OPW was an employer within the defined scope of the FLSA, 29 U.S.C. § 203(d).

34. At all times material to this action, Named and putative Plaintiffs were employees within the scope of the FLSA, 29 U.S.C. §§ 206 and 207.

35. At all times material to this action, Defendant OPW was an enterprise engaged in commerce or the production of goods for commerce as defined by the FLSA, 29 U.S.C. §§ 203(s), 203(r), through the engagement of its employees in commerce or the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and the enterprise has an annual gross volume of sales made or business done of not less than $500,000.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

36. Defendant OPW employs machine operators, welders, and other manufacturing employees.

37. Defendant OPW compensates manufacturing employees on an hourly basis. Defendant OPW classifies these employees as hourly non-exempt under the FLSA.

38. During the relevant time period, to satisfactorily perform the duties required, Defendant OPW required manufacturing employees to perform work-related duties beyond

9

their scheduled shift times, including before their shift start time and during their lunch breaks.

39.     Narciso Solis worked as a Machine Operator for Defendant OPW from approximately October 12, 2015, through November 22, 2021.

40.     As a Machine Operator, N. Solis's duties included, but were not limited to, carrying heavy metals, properly operating manufacturing machines, maintaining these machines and repairing as necessary, working with team members to complete daily tasks, complying with appropriate safety procedures, and meeting Defendant's production requirements.

**Narciso Solis's Pay Rate:**

41.     On or about September 2018, N. Solis earned $11.60 per hour as a Machine Operator.

42.     Upon information and belief, N. Solis's final pay rate was approximately $12.00 per hour.

**Narciso Solis's Work Schedule:**

43.     N. Solis's regularly scheduled shift was Monday through Friday, starting at 5:00 a.m. and ending at 2:30 p.m., but N. Solis typically worked an additional hour, or until 3:30 p.m. each day. Occasionally, N. Solis stayed later than 3:30 p.m. to perform required work activities. Like other manufacturing employees, N. Solis was required to work overtime on the weekends, or risk acquiring attendance points, which, if accumulated, could lead to his termination.

44.     Accordingly, N. Solis worked almost every Saturday from 5:00 a.m. to 2:30

10

p.m., and approximately one (1) Sunday per month from 5:00 a.m. to 2:30 p.m. to ensure Defendant OPW's high production goals were met. Some of this time was spent training new employees.

45. Defendant OPW's corporate policy required employees working on the manufacturing floor to receive a full, uninterrupted thirty (30) minute unpaid meal break each day.

46. As such, N. Solis's total weekly hours worked ranged from fifty-nine (59) to sixty-eight (68), well exceeding the forty (40) hour threshold to trigger the overtime rate of time-and-one-half (1.5) of pay.

## NCWHA WAGE-RELATED FACTUAL ALLEGATIONS

47. According to the NCWHA, "wage" includes bonuses and other amounts promised, including hours up to forty (40) each week, when the employer has a policy or a practice of making such payments. N.C. Gen. Stat. § 95-25.2(16).

48. Defendant's failure to compensate for all hours worked, including work performed from the time Plaintiffs clocked in through the time Plaintiffs clocked out, work performed during meal breaks, and failure to pay employees all promised, earned, and accrued wages, has affected all putative Plaintiffs similarly. Additionally, N. Solis and others similarly situated were promised premium pay for all hours worked at time-and-one-half consistent with Defendant OPW's own written policies as reflected on its earning statements and stated in its employee handbook, irrespective of Defendant OPW's statutory overtime obligation pursuant to the FLSA. Such additional promises made through earning statements are not recoverable under the FLSA.

11

**N. Solis's Pre-Shift Activities:**

49.     Defendant OPW mandated that employees be ready to begin work at the start of the scheduled shift, requiring certain tasks to be completed before the scheduled start time, such as donning required personal protective equipment ("PPE").

50.     Defendant OPW required employees record their time by clocking in and out on Defendant OPW's time clocks, however Defendant prohibited employees from clocking in more than five (5) minutes before the start of their scheduled shifts. Moreover, an employee who clocked in after the scheduled shift start time would receive a ½ disciplinary point.

51.     Therefore, before the start of his shift, N. Solis typically arrived at 4:30 a.m. to prepare for his scheduled shift start time of 5:00 a.m. First, N. Solis entered the plant and went straight to the locker room to gather his PPE. Then, N. Solis went to the restroom to wash his hands and don his PPE. Finally, N. Solis went to the production floor and clocked-in no sooner than five (5) minutes before his scheduled shift start time.

52.     N. Solis spent at least ten (10) minutes performing compensable, pre-shift, off-the-clock work each shift. Because N. Solis was not permitted to record time any sooner than five (5) minutes before his scheduled start time, N. Solis was not compensated for at least five (5) minutes of pre-shift compensable activities from Monday through Saturdays for an approximate total of thirty (30) minutes per week, and up to thirty-five (35) minutes per week when N. Solis and putative Plaintiffs worked seven (7) days per week.

**N. Solis's Unpaid Meal Breaks:**

53.     Throughout his employment, N. Solis was supposed to be able to enjoy a full

thirty (30) minute uninterrupted meal break, which was unpaid. However, N. Solis was rarely able to take a full uninterrupted thirty (30) minute meal break as N. Solis was often directed to complete various tasks during lunch, such as repairing machinery, to comply with Defendant OPW's production requirements, often resulting in additional five (5) minutes lost from his meal break.

54.     Defendant OPW required manufacturing employees to clock out at the beginning of their lunch break. Accordingly, first, N. Solis would leave his workstation and travel to the time clock to clock out at the beginning of lunch. Due to the limited number of time clocks and the volume of employees gathering to clock out, N. Solis's lunch break was impacted if he was at the end of the line.

55.     After clocking out, N. Solis would walk to the restroom to wash hazardous and/or toxic materials from his hands and remove his PPE, navigating hallways crowds of people, and trying to find a sink where he would his hands to remove the toxic materials before eating.  These activities could take up to five (5) minutes given the crowds of people in the hallways and restrooms trying to do the same thing. Then, N. Solis would go to the break room. Following the end of his lunch break, N. Solis would leave the break room early to give himself time to wash his hands, don his PPE, and then wait to punch back in. As such, N. Solis could lose up to another five (5) minutes on the way back for an approximate total of ten (10) minutes per day.

56.     Indeed, failure to clock in again before the thirty (30) minutes allotted for meal breaks would result in a ½ or ¼ disciplinary point and a reprimand by the supervisor.

57.     Because N. Solis and those similarly situated did not receive a full thirty (30)

13

minute uninterrupted lunch break, Solis should have been paid for his entire lunch break. Thus, N. Solis and putative Plaintiffs lost anywhere between one (1) hour per week for regular PPE and sanitizing responsibilities, and between one-and-one-half (1.5) to three (3) hours per week due to working lunch breaks.

**Bonuses**:

63. Defendant OPW promised to pay N. Solis a bonus or additional pay for training new employees. Accordingly, even though training was not part of Solis's job duties, he regularly trained new employees throughout his tenure with Defendant OPW. Defendant OPW did not compensate Solis for this additional time worked.

**Estimated Unpaid Wages:**

58. Thus, to the best of Named Plaintiff's recollection,[6] Named Plaintiff conservatively estimates N. Solis's unpaid promised wages as follows: Named Plaintiff estimates that N. Solis is due unpaid promised straight time for any workweeks when he was not compensated for all promised compensable hours worked, (i.e., pre-shift activities) for a conservative estimate of thirty (30) minutes and a conservative average of three (3) hours per week (for unpaid working lunch breaks) for a total of 3.5 unpaid hours worked per week. Named Plaintiff only claims unpaid promised wages for the two (2) years preceding the end of N. Solis's employment as permissible under the NCWHA, which

---

[6] Such estimated damages are based on Named Plaintiff's best recollection of hours worked, as she cannot recall with precision exact details. *See Anderson v. Mt. Clemmens Pottery*, 328 U.S. 680, 687, 690 (1946). However, a concise review of time records and earning statements will provide a better and more accurate understanding of N. Solis's unpaid wages.

allows a recovery of eight percent (8%) prejudgment interest, which is not recoverable under the FLSA for earned, accrued, and unpaid promised wages from the date such wages first became due.

59.　　Thus, $12.00 (N. Solis's Hourly Rate) * 1.5 * 3.5 hours per week = $63.00 * 8% for prejudgment interest or $5.04 for each workweek when such earned wages became due for a total of $68.04 * 52 weeks = $3,538.08 * 2 years under the NCWHA = $7,076.16 and doubled for liquidated damages amounts to **$14,152.32**.

60.　　Named Plaintiff estimates that if there are approximately five hundred (500) employees[7] who worked the same or similar hours and worked approximately the same length of time, a putative Rule 23 class would have been shorted a combined *estimated* total exceeding **$7 million**.[8] There has been no duplication between damages calculated under the NCWHA and the FLSA.

## **FLSA WAGE-RELATED FACTUAL ALLEGATIONS**

**Unpaid Overtime Hours Worked:**

61.　　Since the FLSA requires that employers pay their employees time-and-one-half (1.5) for hours over forty (40) per week, and N. Solis and those similarly situated were not paid conservatively up to thirty (30) minutes per week for pre-shift activities and an average of three (3) hours per week due to working lunch breaks, Named Plaintiff is entitled

---

[7] Defendant's counsel represented this amount in a hearing in the related action, *Canales v. OPW Fueling Components LLC*, CA No.: 5:22-CV-00459-BO-RJ, Dkt. 193, February 25, 2025, Hearing Transcript at 18:22-19:14.

[8] Again, without payroll and time records for an entire putative class during the entire relevant time period, such damages are simply based on an estimated extrapolation.

to time and one half (1.5) for the third preceding year of N. Solis's employment (the FLSA allows recovery for three (3) years due to willfulness). Thus, $12.00 (N. Solis's Hourly Rate) * 1.5 * 3.5 hours per week = $63.00 * 52 weeks for the *third* preceding year = $3,276.00 (which is only available under the FLSA) * 2 for liquidated damages = **$6,552.00.**

62.     As such, Named Plaintiff is due approximately $6,552.00 for just one year or the preceding third year, which is inclusive of liquidated or double damages. Named Plaintiff estimates that if there are approximately five hundred (500) employees[9] who worked the same or similar hours and worked approximately the same length of time, a putative collective would have been shorted a combined estimated total exceeding approximately $3 million.

## FLSA COLLECTIVE ACTION ALLEGATIONS

63.     Named Plaintiff brings the First Count of the instant Complaint as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of the Estate of Narciso Solis and all similarly situated employees.

64.     Similarly situated employees, for purposes of the FLSA collective action claims, include individuals who were, are, or will be employed by Defendant OPW as manufacturing employees at any time within the three (3) year period prior to the date of the commencement of this action[10] through the present and who did not receive

---

[9] *Supra* fn. 7.
[10] Named Plaintiff previously opted-in to related action *Canales v. OPW Fueling Components LLC* CA No.: 5:22-cv-00459-BO-RJ on January 29, 2024, ECF 70, which was later decertified on

compensation for all hours worked.

65.     The members of the proposed collective action, like Named Plaintiff, are employed as manufacturing employees with substantially similar job requirements and pay provisions and subject to the same common practices, policies, or plans that fail to compensate them for all work performed at the appropriate rate.

66.     Upon information and belief, there are hundreds of putative Plaintiffs and similarly situated current and former manufacturing employees within the scope of the aforementioned FLSA collective.

67.     The members of the proposed collective are known to Defendant OPW, readily identifiable, and may be located through Defendant OPW's employee records.

68.     Pursuit of this action collectively will provide the most efficient mechanism for adjudicating the claims of Named and putative Plaintiffs.

69.     Members of the proposed FLSA collective should be permitted to pursue their claims collectively pursuant to 29 U.S.C. § 216(b).

70.     Pursuant to 29 U.S.C. § 216(b), attached to and filed with the Complaint as Exhibit A, is the Consent to File Suit as Plaintiff executed by Named Plaintiff.

---

March 25, 2025, ECF 208. To preserve Narciso Solis's FLSA claims, Named Plaintiff opted-in to subsequent action *Quevedo Hernandez v. OPW Fueling Components LLC,* CA No.5:25-cv-00203-FL on April 17, 2025, ECF 3, which was later sent to arbitration on August 18, 2025, ECF 30. However, in *Quevedo* the Court tolled the statute of limitations on Solis's FLSA claim from January 29, 2024, to March 25, 2025, therefore recognizing the viability of Solis's FLSA claim. *Id*. Because an FLSA collective action is considered commenced for an opt-in plaintiff as of the date the party files their opt-in notice, 29 U.S.C. § 256(b), the forthcoming date of the commencement of this action is January 29, 2024. As a result, the relevant time period at issue spans from January 29, 2021, through the present.

71.     As this case proceeds, it is likely other individuals will file consent forms and join as opt-in plaintiffs.

72.     Named Plaintiff requests that she be permitted to serve as representative of those who consent to participate in this action and that this action be conditionally certified as a collective action pursuant to 29 U.S.C. § 216(b).

## NCWHA CLASS ALLEGATIONS PURSUANT TO RULE 23 OF THE FEDERAL RULES OF CIVIL PROCEDURE

73.     Named Plaintiff brings the Second Cause of Action of the instant Complaint as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Estate of Narciso Solis and all similarly situated employees to remedy Defendant's violations of the NCWHA, N.C. Gen. Stat. § 95-25.1, *et seq*.

74.     Numerosity: The proposed class is so numerous that joinder of all such persons is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. While the exact number of class members is unknown to Named Plaintiff at this time, the class comprises more than one hundred (100) individuals upon information and belief.

75.     Common Questions Predominate: There is a well-defined commonality of interest in the questions of law and fact involving and affecting the proposed class, and these common questions of law and fact predominate over any questions affecting members of the proposed class individually, as all putative class members have been harmed by Defendant OPW's failure to lawfully compensate them. The common questions of law and fact include but are not limited to the following:

a. Whether Defendant OPW failed to compensate putative Class Members at the earned, accrued, and/or promised rate for all hours worked less than forty (40) per week and in excess of forty (40) each week pursuant to § 95-25.6 and consistent with Defendant's employee handbook as required pursuant to § 95-25.13.

b. Whether Defendant OPW failed to compensate putative NC Class Members for all of their earned, accrued, and/or promised wages, including but not limited to straight time and overtime on their regular pay date in violation of the NCWHA.

c. Whether Defendant OPW failed to compensate putative NC Class Members for all of their earned, accrued, and/or promised wages, including but not limited to promised bonuses in violation of the NCWHA.

76. <u>Typicality</u>: The claims of Named Plaintiff are typical of the claims which could be alleged by any member of the putative class, and the relief sought is typical of the relief which would be sought by each member of the class in separate actions. All putative class members were subject to the same compensation practices of Defendant OPW, as alleged herein, of failing to pay putative class members for all hours worked at the promised hourly rate(s). Defendant OPW's compensation policies and practices affected all putative class members similarly, and Defendant OPW benefited from the same type of unfair and/or unlawful acts as to each putative class member. Named Plaintiff and members of the proposed class sustained similar losses, injuries, and damages arising from the same unlawful policies, practices and procedures.

77.     <u>Adequacy of Representation</u>: Named Plaintiff can fairly and adequately protect the interests of all members of the proposed class, and there are no known conflicts of interest between Named Plaintiff and members of the proposed class. Named Plaintiff has retained counsel who are experienced and competent in both wage and hour law and complex class action litigation.

78.     <u>Superiority</u>: A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all class members is impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual class members may be small for some in the sense pertinent to the class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially greater than if the claims are treated as a class action. Prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they are not parties. The issue in this action can be decided by

means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

79.    <u>Public Policy Considerations</u>: Defendant OPW violated the NCWHA. Just as current employees are often afraid to assert their rights out of fear of direct or indirect retaliation, former employees may also be fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class action lawsuits provide class members who are not named in the Complaint with a degree of anonymity, which allows for vindication of their rights while eliminating or reducing these risks.

80.    Pursuing this action as a class will provide the most efficient mechanism for adjudicating the claims of Plaintiffs and members of the proposed class.

**<u>COUNT ONE</u>**
**Violation of the Fair Labor Standards Act**
**Brought by Plaintiff on Behalf of the Estate of Narciso Solis and All Similarly Situated Employees**

81.    Plaintiffs incorporate by reference all preceding paragraphs as if the same were repeated here verbatim.

82.    At all relevant times, Defendant OPW has been and continues to be an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203.

83.    At all relevant times, Defendant OPW has employed and continues to employee "employee[s]," including Named Plaintiff, and the members of the prospective FLSA collective who have been and continue to be engaged in interstate "commerce"

within the meaning of the FLSA, 29 U.S.C. § 203.

84.    At all relevant times, Defendant OPW has had gross operating revenues in excess of $500,000.

85.    The FLSA, pursuant to §§206 and 207, requires each covered employer, including Defendant OPW, to compensate all non-exempt employees at a rate of not less than one-and-one-half (1.5) times the regular rate of pay for work performed in excess of forty (40) hours in a single workweek.

86.    At all relevant times, Defendant OPW, pursuant to its policies and practices, willfully failed and refused to pay for all hours worked by Plaintiffs as well as non-discretionary bonuses.

87.    Defendant OPW's failure to pay Plaintiffs for all hours worked at the appropriate overtime rate for hours worked in excess of forty (40) hours per week despite, upon information and belief, knowing its obligations under the law entitles Plaintiffs to liquidated damages in an amount equal to the amount of unpaid wages under 29 U.S.C. § 216(b) and a three (3) year statute of limitations. Defendant OPW cannot show it acted in good faith, and its acts constitute willful violations of the FLSA within the meaning of 29 U.S.C. § 255(a).

88.    As a result of Defendant OPW's unlawful acts, Plaintiffs have been deprived of compensation for all required hours worked and appropriate compensation for all overtime hours worked, entitling them to recovery of actual damages, liquidated damages, and attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

89.    Plaintiffs and putative plaintiffs each worked more than forty (40) hours in

one or more workweeks within the applicable statutory period.

## COUNT TWO
**Violation of the North Carolina Wage and Hour Act**
**N.C. Gen. Stat. § 95-25.6**
**Brought by Plaintiff on Behalf of the Estate of Narciso Solis and All Similarly**
**Situated Employees**

90.     Plaintiffs incorporate by reference all preceding paragraphs as if the same were repeated here verbatim.

91.     The class period for this cause of action is at least two (2) years from the date of the filing of the *Canales* Complaint. *See Quevedo-Hernandez,* ECF 30.

92.     At all relevant times, Defendant OPW has employed and/or continues to employ putative Plaintiffs and Rule 23 class members within the meaning of the NCWHA.

93.     Pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.6, it is unlawful for an employer to "suffer or permit" an employee to work without paying all owed, earned, and promised wages on the employee's regular payday.

94.     Additionally, North Carolina law requires every employer to notify employees of the promised wages and the day of payment as well as making available a written version of the employment practices and policies regarding promised wages. *See* N.C. Gen. Stat. § 95-25.13(1)-(2).

95.     Acceptable measures of providing employees information about promised wages include "an up-to-date employee handbook or other written statement of policies and practices with regard to promised wages" or through "payroll records, including check stubs, for wages promised in the form of hourly pay or salary or other form whose terms are readily identifiable from payroll records," and employers are required to pay such

23

promised wages. Notification of Employment, 13 N.C.A.C. 12.0805 (2022).

96. Additionally, "[a]n employee's signature on an employer's written notice of the promised wages which bears the date on which the employee was provided with the notice shall be presumptive evidence of the employer's notification in accordance with G.S. 95-25.13(1)." Notification at Time of Hiring, 13 N.C.A.C. 12.0804 (2022).

97. Invariably, ***"[o]nce a promise is made by an employer, that employer must pay all promised wages, including wage benefits, accruing to its employees based on any policy, agreement or practice that the employer has established."*** *See* North Carolina Department of Labor, *Promised Wages Including Wage Benefits*, https://www.labor.nc.gov/workplace-rights/employee-rights-regarding-time-worked-and-wages-earned/promised-wages-including.

98. Pursuant to the NCWHA, N.C. Gen. Stat. §§ 95-25.13 and 95-25.6, Defendant OPW was required to pay Plaintiffs and putative class members all wages, when due, for all promised earned and accrued regular, straight, and overtime wages of one-and-one-half (1.5) times the promised wage rate, which is a part of all the employees' accrued and earned wages, and which should have been paid when due on the employees' regular payday; this requirement is not covered by the overtime provision under the FLSA. Moreover, the FLSA's Savings Clause pursuant to § 218(a) provides that employers should comply with the more stringent between the FLSA and state wage and hour laws. Because the NCWHA provides more stringent protection than the FLSA, the FLSA does not preempt the NCWHA.

99. Every employer shall maintain complete and accurate records that document,

24

in relevant part, the hours worked each workweek and all other records required to compute wages. 13 N.C.A.C. 12.0801.

100. Defendant OPW intentionally refused to pay all wages due, including wages for all hours worked, as accurately recorded by Plaintiffs, and as set forth in the preceding paragraphs of this Complaint, to Plaintiffs and putative class members in violation of the NCWHA.

101. Defendant OPW was aware that Plaintiffs and putative Plaintiffs were not receiving all straight-time wages for all hours worked up to forty (40) and overtime wages for hours worked in excess of forty (40) per week pursuant to the promised straight-time rate and corresponding premium overtime rate.

102. Defendant OPW employed Named and putative Plaintiffs within the State of North Carolina.

103. At all relevant times, Defendant OPW, pursuant to its policies and practices, failed and refused to pay Plaintiffs all owed, earned, and promised wages, including for all work-related activities performed from the moment they begin performing them through the moment they clocked out, including, for example, required pre-shift work performed by Plaintiffs, and at the appropriate promised overtime rate that Plaintiffs are lawfully entitled to for hours worked in excess of forty (40) in a single workweek pursuant to the NCWHA.

104. Consistent with the above, Defendant's failure to pay Plaintiffs all owed, earned, and promised wages was in violation of N.C. Gen. Stat. § 95-25.6.

105. As a result of Defendant's unlawful policies and practices, Plaintiffs have

been deprived of compensation due and owing.

106.    Defendant's failure to pay Plaintiffs all owed, earned, and promised wages, despite the fact that, upon information and belief, Defendant OPW knew of its obligations under the law, entitles Plaintiffs to liquidated damages in an amount equal to the amount of unpaid wages, under N.C. Gen. Stat. § 95-25.22(a1).

107.    Due to Defendant OPW's unlawful acts, Plaintiffs have been deprived of all compensation due under the law, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to N.C. Gen. Stat. §§ 95-25.13, 95-25.6, 95-25.22(a), (a1), and (d).

## **PRAYER FOR RELIEF**

WHEREFORE, Named Plaintiff, on behalf of the Estate of Narciso Solis and all those similarly situated, prays that this Honorable Court:

1.    Issue an Order certifying this action as a collective action under the FLSA and designate Named Plaintiff as a representative of all those similarly situated under the FLSA collective action;

2.    Issue an Order certifying this lawsuit as a class action under the NCWHA and designate Named Plaintiff as a representative on behalf of all those similarly situated under the NCWHA class;

3.    Award Plaintiffs and all those similarly situated actual damages for all unpaid wages found due and liquidated damages equal in amount as provided by the FSLA, 29 U.S.C. § 216(b) and pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.22(a);

4.    Award Plaintiffs and all those similarly situated pre- and post-judgment

interest at the statutory rate as provided by the FLSA, 29 U.S.C. § 216(b) and pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.22(a);

5.  Award Plaintiffs and all those similarly situated their attorneys' fees, costs, and disbursements as provided by the FLSA, 29 U.S.C. § 216(b) and pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.22(d); and

6.  Grant such further legal and equitable relief as the Court deems necessary and proper in the public interest.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted, September 5, 2025.

*/s/ Gilda Adriana Hernandez*
Gilda A. Hernandez (NCSB No. 36812)
Hannah B. Simmons (NCSB No. 59579)
Matthew S. Marlowe (NCSB No. 60035)
Briahna B. Koegel (NCSB No. 62491)
S. Byron Frazelle (NCSB No. 59771)
**THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC**
215 S. Academy Street
Cary, NC 27511
Phone: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
hsimmons@gildahernandezlaw.com
mmarlowe@gildahernandezlaw.com
bkoegel@gildahernandezlaw.com
sbfrazelle@gildahernandlaw.com

*Attorneys for Plaintiff*

27